IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIOGENES A. ROSARIO,** | : | CIVIL NO. 1:CV-06-0873 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **BUREAU OF PRISONS,** | : | |
| Defendant | : | |

### MEMORANDUM AND ORDER

Plaintiff Diogenes A. Rosario ("Rosario") commenced this action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.*, alleging negligent exposure to environmental tobacco smoke ("ETS") while incarcerated at the Federal Correctional Institute at Allenwood ("FCI-Allenwood"). (Doc. 1). Presently before the court is defendant's motion for summary judgment. (Doc. 12). For the reasons set forth below, defendant's motion will be granted.

**I.  Statement of Facts**[1]

Rosario entered into the custody of the Federal Bureau of Prisons ("BOP") on April 1, 2002. During admission at the Federal Detention Center in Brooklyn, New York, he reported that he was in "good health." (Doc. 14-2, Ex. 2, Attachment ("Att.") 1, p. 10). Although he had a history of asthma since childhood, he had not suffered an episode for more than three years. (Id.). He was received at FCI-Allenwood on April 10, 2002. He again reported that he had asthma but that he was not experiencing any problems at the time. His medical examination was normal. (Id. at p. 13).

The smoking policy in effect at the time he arrived at FCI-Allenwood established designated smoking and non-smoking areas. The SHU and Units 3A and 3B were designated as non-smoking housing units. (Id. at Att.) 2). Assignment to non-smoking housing units was based upon non-smoking

---

[1] In accordance with the standard or review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff. See infra Section I.I.

preference as determined at Intake Screening. (Id.). No tobacco or tobacco products were allowed to be utilized or stored anywhere in these areas. (Id.). Conversely, in Units 1, 2 and 4, smoking was allowed in inmate cells, but the common areas were designated non-smoking areas. When Rosario arrived at FCI-Allenwood on April 10, 2002, he was housed in the Special Housing Unit ("SHU"). (Doc. 14-2, Exhibit ("Ex.") 1, ¶ 3). He did not indicate that he preferred to be housed in the non-smoking unit. Shortly after his arrival, he was moved to general population and, within a short time period, was assigned to Housing Unit 2, where he is presently housed. (Id.).

In April 2004, a memorandum stating that no later than July 15, 2004, "institutions within the Federal Bureau of Prisons facilities will be free of second hand smoke (specifically inside all buildings)" was issued to the inmate population. (Doc. 14-2, Ex. 1, Att. 3). On June 21, 2004, the policy was amended to ban smoking inside all buildings. Hence, from this point forward, Rosario was housed in a smoke free unit. The policy further designated all outside areas as smoking areas for staff and inmates. (Id. at Att. 4). "Smoking will not take place at or near the entrance to any building where nonsmokers will be subjected to second hand smoke." (Id.). According to Rosario, despite this policy, "inmates frequently smoked inside the cells['] common areas, showers, mop closets etc., and still smoke there [until] this day." (Doc. 16, p. 9, ¶ 1). The policy was amended in September 2004, to limit the outside areas designated as smoking. (Id. at Att. 5).

On October 26, 2004, Rosario was sent to the medical department because of an "asthma attack." (Doc. 14-2, Ex. 2, Att. 1, p. 17). Because the examination revealed no evidence of wheezing or coughing, he was directed to purchase cold medication from the commissary. (Id. ). Within a month, Rosario again complained of having an asthma attack. He was coughing, short of breath and anxious. Based on the presence of wheezing and rhonchi in both lungs, he was given a nebulizer treatment,

2

placed on an antibiotic and an inhaler. He was monitored over the course of the next several months by the pulmonary clinic. (Id. at p. 17-24). During that time period, he continued his medications and was given a chest x-ray. (Id.). On February 10, 2005, Rosario reported that his condition had improved.

In April 2005, he reported to sick call complaining of a non-productive cough, shortness of breath at night, chest tightness and palpitations. (Id. at p. 25). He was diagnosed with acute bronchitis and asthma exacerbation and treated with an oral steroid and antibiotic and was directed to continue his inhaler and follow-up with the pulmonary care clinic the next week. (Id. at p. 26). He was also placed on a Holter Monitor for monitoring to check if he had any "events." (Id.). The Holter monitor was removed the next day and he was later verbally informed of the results. (Id. at pp. 26, 29).

His pulmonary clinic evaluation on May 5, 2005, revealed clear lungs and normal lung expansion. His treatment regimen was continued. (Id. at p. 28). Less than a week later, he reported that his symptoms had not improved. He was advised to increase the use of the steroid inhaler. (Id. at 29).

Plaintiff sought medical treatment again in August 2005. He complained that, in the morning, he suffered from tightness in his chest and shortness of breath, sinus pressure and congestion. (Id. at p. 30). He appeared "non-distressed, healthy, well nourished." (Id.). His chest exam revealed normal expansion, and no wheezes, rhonchi, rales or sound. He was diagnosed with "chronic care flu asthma." (Id. at p. 31). His medication was continued and he was directed to report back in one week for follow-up on his flu symptoms. On August 26, 2005, although he felt his symptoms had improved, he continued to suffer from chest tightness, cough, shortness of breath and wheezing. He was diagnosed with asthma exacerbation, placed on an oral steroid and asked to report back in one week.

The next time Rosario sought treatment was when he reported to the pulmonary clinic in

November 2005. A radiograph of his chest revealed "clear lung fields throughout." (Id. at p. 38). He was continued on his medication regimen at that time and at each of his future visits to the clinic. (Id. at pp. 33-34, 40-41, 43-45).

On each of his visits to the pulmonary care clinic, Plaintiff was asked whether he smoked and whether he was educated on avoiding tobacco, *inter alia*. (Id. at pp. 20, 24, 28, 31, 34, 37, 41, 44; Doc. 16, ¶ 6). There are no entries or notations in the medical records that Rosario ever complained of tobacco smoke or stated that tobacco smoke triggered his symptoms. (Doc. 14-2, Ex. 2, ¶ 20). Further, "[a] search of records has revealed that the Plaintiff never filed any grievance about being housed in a unit which was designated for smoking. Likewise, the Plaintiff never requested to be moved to the non-smoking unit, Unit 3." (Doc. 14-2, Ex. 1, ¶ 13).

Remarkably, commissary records indicate that between the dates of June 19, 2002 and March 2, 2005, Rosario purchased 192 packs of tobacco products. He purchased 106 packs of Middleton Black & Mild Cigars, thirty-nine packs of Bugler tobacco, twenty-seven packs of Newport Box, eleven packs of Marlboro Box, six packs of Kool Box and three packs of Kite tobacco. Approximately 151 packs were purchased prior to the date smoking was banned in all housing units. In response plaintiff states that he "has never smoked in his entire life, nor was he buying cigarretes [sic] for inmates in his living quarters." (Doc. 16, ¶ 8).

On April 14, 2005, Rosario filed an administrative tort claim alleging that since "[o]n or about October 2004 through present" he suffered injuries due to constant exposure to second hand smoke. (Doc. 14-2, Ex. 1, Att. 7). He states that the second hand smoke has aggravated his "prior existing condition of asthma/bronchitis to the point where [he] ha[s] to rely on medicine everyday." (Id.). On September 16, 2005, regional counsel denied the claim stating as follows:

4

> After careful review of this claim, I have decided not to offer a settlement. Investigation reveals, until recently, policy stated all Bureau of Prisons' facilities and vehicles were no-smoking areas, unless specifically designated as a smoking area by the Warden. The Warden was required to designate an outdoor area as a smoking area and could, but was not required to, designate a limited number of smoking areas, where the needs of effective operations so required. Inmates found smoking in prohibited areas at that time were subject to disciplinary action. Staff made every effort to enforce the no-smoking rules. The Warden has taken reasonable steps to ensure that inmates at that facility are not exposed to second-hand smoke. Tobacco products were eliminated from sale to inmates at FCI Allenwood on March 3, 2005.
>
> The medical record indicates on October 26, 2004, you were diagnosed with an upper respiratory infection (URI), causing asthma complications. In April 2005, you also complained of nonproductive cough following the flu. The record indicates you have and continue to receive appropriate treatment for the medical symptoms you present, consistent with community standards. There is no evidence to suggest your asthma condition has been aggravated by second-hand smoke. You fail to show that negligence on the part of the Bureau of Prisons' employee resulted in your alleged injury.

(Doc. 14-2, Ex. 1, Att. 7, p. 2). Rosario sought reconsideration. His request was denied because he provided "no new information which would warrant further settlement consideration." (Id. at p. 3).

In March 2006, the institution banned smoking in all areas and became a tobacco free institution for all inmates. (Doc. 14-2, Ex. 1, Att. 6). Rosario contends that tobacco remains readily available throughout the institution. The instant action was filed on April 25, 2006. (Doc. 1).

**II. Standard of Review**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson, 477 U.S. at 248. A factual dispute is genuine only if there is a sufficient

5

evidentiary basis that would allow a reasonable fact finder to return a verdict for the nonmoving party. Id. at 249; Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." Anderson, 477 U.S. at 248.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

With respect to the sufficiency of the nonmoving party's evidence, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III. Discussion** [2]

The Federal Tort Claims Act confers on district courts subject matter jurisdiction over negligence actions against the United States. It provides, in relevant part, that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." See 28 U.S.C. § 1346(b)(1); United States v. Muniz, 374 U.S. 150 (1963).

In presenting a FTCA claim, a plaintiff must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injuries. Mahler v. United States, 196 F. Supp. 362, 364 (W.D.Pa. 1961), aff'd 306 F.2d 713 (3d Cir. 1962).

Notwithstanding the fact that under the FTCA, the law of the place where the alleged act or omission occurred is to be applied, 28 U.S.C. §1346(b) (1991); Turner v. Miller, 679 F. Supp. 441, 443 (M.D.Pa. 1987), in cases involving federal prisoners, it has been recognized that 18 U.S.C. Section 4042 applies and that the government does have a duty to protect the prisoners from harm. "It is undisputed that the United States owed a duty to Rosario to not expose him to ETS." (Doc. 13, p. 5).

---

[2]Plaintiff's complaint, which was filed on April 26, 2006, was clearly labeled "complaint for negligence for exposing plaintiff to environmental tobacco smoke pursuant to the Federal Tort Claims Act." (Doc. 1). In addition, under a section labeled "tort claim," he states that "[t]he present claim is brought under the FTCA. . . ." (Id. at p. 2). Although he cited to Eighth Amendment deliberate indifference case law, he failed to allege an Eighth Amendment claim. And, even if he had alleged such a claim, it would be subject to dismissal for failure to exhaust administrative remedies. See Porter v. Nussle, 534 U.S. 516, 532 (2002): Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). As noted by defendant, he never filed an administrative remedy or grievance about being housed in a smoking environment. (Doc. 14-2, Ex. 1, p. 4, ¶ 13).

However, plaintiff fails to meet his burden with respect to establishing a breach of that duty. "The government is not an insurer of the safety of a prisoner." Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976). Rather, the duty owed is one of reasonable care and ordinary diligence. See 18 U.S.C. §4042; Hossic v. United States, 682 F. Supp. 23, 25 (M.D.Pa. 1987); Lederhandler v. Bolotini, 402 Pa. 250, 167 A.2d 157 (1971). As is evident from the record, since 2001, the BOP has taken steps to eliminate inmates' exposure to ETS. Initially, inmates were assigned to the non-smoking unit based on a non-smoking preference determined at intake screening. At intake, Rosario did not request to be placed in the non-smoking unit. Further, while this policy was in effect, he never complained about being housed in a smoking unit and did not seek to have his housing assignment changed to the non-smoking unit.[3] The BOP's ETS policy was amended to prohibit smoking in the interior of all buildings in June 2004. Then, in September 2004, smoking in outdoor areas was severely limited. On March 3, 2005, tobacco products were eliminated from sale to inmates.[4] In March 2006, FCI-Allenwood became a completely smoke-free environment. Defendant acted reasonably in enacting a policy to address inmates' exposure to ETS and amending the policy to eventually create a smoke-free environment. There is no evidence that the defendant breached its duty of care. Consequently, defendant is entitled to an entry of summary judgment

Even if the Court were to conclude that the defendant breached the duty of care, Rosario's claim would still fail. Under Pennsylvania law, the plaintiff is also required to show by a preponderance of the evidence that a defendant's negligence was the proximate cause of his injury. Baum v. United

---

[3]Significantly, during this time period, Rosario purchased approximately 151 packs of tobacco products.

[4]Rosario's final tobacco purchase was March 2, 2005. (Doc. 14-2, Ex. 3, p. 4).

States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Proximate cause is defined as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978). There is no medical evidence of record to support Plaintiff's contention that his asthma condition was aggravated by second hand smoke. Record evidence establishes that Plaintiff's asthmatic condition was complicated and became problematic in October 2004, a full four months after Respondents' smoke free policy was implemented. Plaintiff has failed to produce evidence from which a reasonable fact finder could determine that Respondents proximately caused his injury.

**IV.  Order**

AND NOW, this 27th day of March 2007, it is hereby **ORDERED** that:

1. Defendant's motion for summary judgment (Doc. 12) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendant and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order will be DEEMED frivolous, not taken in good faith and lacking in probable cause.

s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court